Filed 1/5/23  P. v. Stepp CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F080237 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. VCF273216A) |
| JOSHUA CALAB STEPP, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Kathryn T. Montejano, Judge.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Poochigian, Acting P. J., Detjen, J. and Franson, J.

Defendant Joshua Calab Stepp's appeal challenges only certain aspects of his sentencing. No issues related to the verdicts reached by two separate juries are raised here. Following our review of the record, we conclude a remand is necessary to allow the trial court to reconsider whether an aggravated term is warranted for defendant's conviction for arson of property. Defendant is also entitled to a *Franklin* proceeding.[1]

## BACKGROUND

The facts underlying this appeal occurred in September 2012 when defendant was 23 years old. Defendant, a former gang member, was involved in causing the death, by stabbing, of another former gang member, whose body was then taken to and left in an orchard.[2] Defendant eventually returned to the orchard with a codefendant and his mother, who he had asked to bring a gas can. When defendant and his codefendant reached where they had left the body, they poured gasoline on the victim and a car that had been used in the crime and lit them on fire. The partially burned body and the car were found by a farmworker soon thereafter.

Although this case was first charged in 2012, it was not until October 2017 when a first amended information was filed, charging defendant with conspiracy (Pen. Code, § 182, subd. (a)(1),[3] a felony; count 1), murder (§ 187, subd. (a), a felony; count 2), dissuading a witness (§ 136.1, subd. (c)(1), a felony; count 3), conspiracy to dissuade a witness (§ 136.1, subd. (c)(2), a felony; count 4), and arson (§ 451, subd. (d), a felony; count 5). The first amended information also alleged as to counts 1 through 4, that each offense was committed for the benefit of a gang (§ 186.22, subd. (b)(1)(C), (b)(4) & (5)), as to counts 1 through 3, defendant used a deadly weapon (§ 12022, subd. (b)(1)), as to

---

[1]    *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).

[2]    A codefendant who is not part of this appeal was involved in the commission of these crimes. This codefendant entered into an immunity agreement and testified during defendant's trial.

[3]    All further statutory references are to the Penal Code, unless otherwise specified.

2.

count 2, gang and felony-murder kidnapping special circumstances (§ 190.2, subd. (a)(17) & (22)), and as to counts 3 and 4, defendant inflicted great bodily injury (§ 12022.7, subd. (a)). Additionally, it was alleged that defendant suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), had a prior serious felony conviction (§ 667, subd. (a)), and had served a prior prison term (§ 667.5, subd. (b)).

In December 2017, a jury found defendant not guilty of counts 1, 3, and 4. Defendant was, however, found guilty of count 5 (arson of property). With respect to count 2, murder, the jury was unable to reach a verdict. A minute order indicated the People intended to retry defendant for the allegations contained in count 2, and that sentencing for count 5 would trail until after that second trial.

At the end of the second trial on June 18, 2019, the jury found defendant not guilty of murder in the first degree, but guilty of murder in the second degree. The jury also found not true the allegation defendant committed the crime for the benefit of a street gang but found true the allegation defendant personally used a deadly and dangerous weapon, a knife. After the jury was released, the court conducted a bifurcated proceeding and found true the allegations defendant had a prior strike conviction, a prior serious felony conviction, and served a prior prison term. During this proceeding, the court acknowledged receiving a certified record of conviction related to a plea entered by defendant in 2008 for the crimes of attempted carjacking (§§ 664/215), and burglary of a vehicle in the second degree (§ 459). Defendant received a total sentence for these two prior convictions of two years six months.

On October 25, 2019, defendant was finally sentenced in this matter. For the count 5 conviction for arson of property, defendant received a consecutive determinate term of 11 years (the upper term of three years doubled), plus five years for the section 667, subdivision (a) enhancement. For the count 2 second degree murder conviction, defendant was sentenced to an indeterminate term of 30 years to life (15 years

3.

doubled for the strike), one year for the section 12022, subdivision (b)(1) enhancement, and five years for the section 667, subdivision (a) enhancement. This appeal followed.

## DISCUSSION

Our task in this appeal is to consider only the two issues raised by defendant; both issues are related to sentencing.

## I. Defendant is Entitled to a *Franklin* Proceeding

### A. The Controlling Legal Standard

A youth offender parole hearing (YOPH) is a hearing conducted by the Board of Parole Hearings to review "the parole suitability of any prisoner who was 25 years of age or younger … at the time of the controlling offense." (§ 3051, subd. (a)(1).) "[T]he board, in reviewing a prisoner's suitability for parole … shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c).)

> "[A]ssembling such information [is] 'typically a task more easily done at or near the time of the juvenile's offense' [citation], [and thus the defendant should have the opportunity] to 'put on the record the kinds of information that sections 3051 and 4801 deem relevant at a [YOPH]' [citation]. [T]he trial court [may] receive 'any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at [the defendant's] eventual [YOPH].' " (*In re Cook* (2019) 7 Cal.5th 439, 446.)

The underlying goal is to provide a meaningful baseline of information about a defendant's characteristics and circumstances so that a parole board can someday judge the extent the defendant has matured and become rehabilitated while in custody. (*People v. Delgado* (2022) 78 Cal.App.5th 95, 104 (*Delgado*).) However, section 3051 does not apply and a YOPH is not available, "if the defendant was convicted under the Three Strikes law (pertaining to repeat offenders) or the 'One Strike' law (pertaining to certain sexual offenders), or if he was sentenced to [life without the possibility of parole] for an offense committed after he reached the age of 18." (*Delgado*, at p. 100, citing

4.

section 3051, subd. (h).)  The *Delgado* court further stated the treatment of youth offenders sentenced pursuant to the Three Strikes Law for purposes of a YOPH does not violate equal protection, as it constitutes a rational approach to addressing the problem of recidivism.  (*Id*. at p. 102.)

Yet, case law has held that if a defendant is ineligible for a YOPH under section 3051, another type of proceeding may still be available.  In *Franklin*, the defendant was 16 years old when he committed murder, and the trial court was statutorily required to sentence him to two consecutive sentences of 25 years to life.  (*Franklin*, *supra*, 63 Cal.4th at p. 268.)  The *Franklin* court concluded it was unclear whether the defendant had a sufficient opportunity at sentencing to "make an accurate record of [his youth-related] characteristics and circumstances at the time of the offense" to enable the board to "properly discharge its obligation to 'give great weight to' youth-related factors."  (*Id*. at p. 284.)  The court remanded the case to the trial court to determine whether the defendant had an opportunity to make this record.  (*Id*. at pp. 286−287.)  This is commonly referred to as a "*Franklin* proceeding."

The *Delgado* court recently held:

"[T]here is another legal basis for granting … a *Franklin* proceeding. [T]hat entitlement lies in subdivision (c) of section 4801, which was enacted in conjunction with [section] 3051.  [¶]  Like section 3051, section 4801, subdivision (c) was enacted in 2014 as part of the Legislature's effort to bring California law into conformity with Supreme Court precedent respecting juvenile sentencing.  (*Franklin*, *supra*, 63 Cal.4th at pp. 268, 276.)"  (*Delgado*, *supra*, 78 Cal.App.5th at p. 103.)

The *Delgado* court explained the reference in section 4801, subdivision (c) to section 3041.5 indicated the Legislature's intent that the criteria set forth in section 4801, subdivision (c) apply broadly to all parole hearings, not just YOPHs.  (*Delgado*, *supra*, 78 Cal.App.5th at p. 103.)  Consequently, even though a defendant is not entitled to a YOPH, the parole board will have to consider his diminished capacity and subsequent maturation in assessing his suitability for parole at some point in the future.  (*Ibid*.)

5.

"[B]ecause section 4801, subdivision (c) requires the parole board to consider youth-related factors during parole hearings for youthful offenders, *Franklin* proceedings should be provided to … all … defendants who are statutorily ineligible for a YOPH under section 3051." (*Delgado*, at pp. 103–104.)

Based on this discussion, we reach three conclusions in this case. First, as expressly stated by section 3051, subdivision (h), defendant is ineligible for a YOPH because he was sentenced under the Three Strikes law. Second, section 3051's exclusion of defendants sentenced under the Three Strikes law does not violate equal protection. (*Delgado*, *supra*, 78 Cal.App.5th at pp. 101–103; *People v. Wilkes* (2020) 46 Cal.App.5th 1159, 1167; *People v. Moore* (2021) 68 Cal.App.5th 856, 864.) And third, as the parties agree, defendant should receive a *Franklin* proceeding even though he is ineligible for a YOPH because evidence related to his youth will be relevant at an eventual parole hearing. (*Delgado*, at pp. 103–104.) Thus, we remand this case for a *Franklin* proceeding.

## II.     Resentencing is Required Under Section 1170

Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.; stats. 2021, ch. 731, § 1.3) (Senate Bill 567) and Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 695, § 5) amended section 1170 in two respects that are relevant here. First, a court must impose the middle term, unless certain narrow circumstances exist. (§ 1170, subd. (b)(1).) An upper term may be imposed when it can be justified by aggravating circumstances supported by facts that have been stipulated to by the defendant or found true by a jury or the judge in a court trial. (*Id*., subd. (b)(2).) However, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id*., subd. (b)(3).)

6.

What we must now consider is whether the trial court "set forth on the record the facts and reasons" for imposing the upper term.[4] (§ 1170, subd. (b)(5).) If the court failed to articulate its reasons as is now required by section 1170, this court must consider whether the failure requires remanding the case for resentencing, or if it can be upheld because the error could be viewed as harmless. This court recently articulated its standard for harmless error in the Senate Bill 567 context. (*People v. Dunn* (2022) 81 Cal.App.5th 394, 405–410, review granted Oct. 12, 2022, S275655 (*Dunn*).) Specifically:

> "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step …, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b)." (*Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410, fn. omitted.)

## A.     Was There Error, and If So, Was It Harmless?

Sentencing in this case occurred at the end of a lengthy hearing during which the court considered various redactions and modifications to the probation report, the calculation of credit days, a *Romero* motion brought on behalf of defendant, and testimony from the victim's brother and mother addressing the impact of the victim's

---

[4]     Because this case is not yet final on appeal, defendant is entitled to the benefit of section 1170, as amended, pursuant to the principles of retroactivity set forth in *In re Estrada* (1965) 63 Cal.2d 740.

death on the family. When finally moving on to sentencing defendant, the trial court started by addressing the sentence for count 5, the arson conviction:

> "In Count 5, the defendant's gonna be committed to state prison for the aggravated term of six years pursuant to 1170.12(c)(1) plus an additional and consecutive five years pursuant to 667(a)(1) for a total of 11 years …."

The citations to the Penal Code highlight the fact defendant received the aggravated term of three years for the conviction of arson to property alleged in count 5. (§ 451, subd. (d).) This three-year term was then doubled to six years due to a prior conviction that qualified as a strike. Another five years was added pursuant to section 667, subdivision (a)(1), for a prior serious felony conviction, which requires that the enhancement run consecutively. No statement was made at any time during sentencing while on the record about the reasons for choosing the aggravated term, as is required by section 1170, subdivision (b)(5) ["The court shall set forth on the record the facts and reasons for choosing the sentence imposed."].

The People contend that the failure to specify reasons for choosing the aggravated term can be considered harmless. They specifically cite section 1170, subdivision (b)(3) to argue that a certified record of a defendant's prior conviction can be used to justify an aggravated sentence without submitting the question to a jury. While this might be true, and we might guess that this was something the trial court considered, there was no statement "on the record" actually supporting this conclusion, as is required under section 1170, subdivision (b)(5). We acknowledge there is evidence in the record that a certified record of conviction was provided to the court as an exhibit at the end of the jury trial. However, no reference was made to the certified record of conviction during sentencing, or at any time during the hearing before sentencing occurred.

While it would be tempting to conclude the jury would have found beyond a reasonable doubt the existence of a prior conviction based on the certified record, we are not confident this court can also conclude, as is required by *Dunn*, that it is reasonably

8.

probable the jury would have found other aggravating factors beyond a reasonable doubt. (*Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410.) Defendant was charged with murder in count 2. Two verdict forms were provided to the jury at the end of the trial, and the jury found defendant guilty of second degree murder. The jury also rejected the special allegation that the act was committed to benefit a street gang, but did find true defendant used a knife, a deadly or dangerous weapon.

First degree murder requires a finding the defendant committed the act by "lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing." (§ 189, subd. (a).) "All other kinds of murders are of the second degree." (§ 189, subd. (b).)

The conclusion reached by the jury that defendant was guilty of second degree murder and not first degree murder could be viewed as going against conclusions stated in the probation report, which we are aware was before the trial court during the same hearing when sentencing occurred.[5] Specifically, the probation report lists the "aggravation factors" as follows:

> "The crime involved great violence, great bodily harm, the threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness. [Citation.]

> "The manner in which the crime was carried out indicates planning, sophistication or professionalism in that the defendant told the co-defendant he was going to 'get' the victim prior to the incident."

These statements lean toward a conviction for first degree murder rather than second degree murder. Yet the jury rejected first degree murder and convicted defendant of second degree murder.

Again, the trial court provided no reasons on the record for choosing the aggravated term. Section 1170, subdivision (b) now requires "that every factor on which

---

[5] In fact, the trial court stated its concern that the probation report seemed to contain many inaccuracies which could have long term impacts for defendant.

a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), [must be] admitted by the defendant or proven to a jury." (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465–466.) "It would be entirely speculative for us to presume, based on a record that does not directly address the aggravating factors, what a jury would have found true .…" (*Id.* at p. 466.) We, therefore, must remand this case for resentencing consistent with the requirements of section 1170, subdivision (b). (See *Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410.)

## DISPOSITION

This case is remanded so that defendant may be afforded a *Franklin* proceeding. The sentence is vacated. On remand, the trial court is directed to pronounce judgment in accordance with section 1170, subdivision (b), consistent with this opinion. Following resentencing, the trial court shall forward an amended abstract of judgment to the appropriate authorities. In all other respects, the judgment is affirmed.